GEORGE W. SNYDER, PLAINTIFF IN ERROR, v. THE J. S. ROGERS COMPANY, DEFENDANT IN ERROR.

Argued March 10, 1903—Decided June 15, 1903.

The plaintiff was a painter in the employ of the defendant company, which had a contract for painting the inside of a building. In order to paint the ceiling of a room it was necessary to construct a scaffolding, below the ceiling, upon which the painters could stand. The plaintiff was assisting in constructing this scaffolding, which was to consist of a ladder, supported at either end, and a plank laid upon the rungs. After the ladder had been placed in position, but before the plank had been put upon it, the plaintiff stepped upon the ladder to see if it was at a proper height to enable the painters to work upon the ceiling, and, as he was stepping back off of the ladder, the ladder broke, and the plaintiff fell and was injured. *Held*, in an action against the master to recover damages for the injury, the plaintiff was properly nonsuited for failure to show that the defendant had been guilty of any breach of duty by not causing reasonable inspection of the ladder to be made, and for failure to show that reasonable inspection would have disclosed any defect in the ladder.

On error to the Supreme Court.

For the plaintiff in error, *Samuel K. Robbins* and *John W. Wescott.*

For the defendant in error, *Edward A. Armstrong.*

The opinion of the court was delivered by

GARRETSON, J. The writ of error brings up a judgment of nonsuit. The plaintiff was a painter in the employ of the defendant company, which was engaged in painting the ceiling and side walls of a room within a building. This room occupied in height two stories of other parts of the building. In order to paint the ceiling it was necessary to erect a scaffolding for the painter to stand upon. The scaffolding was to be made of a ladder, below and nearly parallel with the ceiling, and a board or plank laid on the rungs between

Snyder v. Rogers Co.    *69 N. J. L.*

the sides to distribute the weight. One end of the ladder was to be laid on a trestle and the other end on the sill of a window opening from the second story of the other part of the building into a room where the painting was to be done. One end of the ladder had been placed on the trestle and the plaintiff placed the other end on the sill of the window. The sill of the window was lower than the top of the trestle, so that the ladder was not exactly level. After the ladder had been placed in this position, but before any plank had been placed on it, the plaintiff stepped upon it and raised his hand towards the ceiling to see whether the scaffolding was at a proper height to enable the painters to reach the ceiling, and, just as he was about to step back, the ladder broke, and he was precipitated to the floor and injured.

It seems, from the evidence, that it was a customary thing to use ladders in this way, and that the plaintiff had assisted in so using them in the construction of the scaffolding. If it was a dangerous mode of using such ladders, the plaintiff was as familiar with that danger as the master. He was a painter of many years' experience, accustomed to use ladders in his business, and must be considered to have had knowledge whether or not an ordinary ladder could be safely used in the manner in which the ladder was used in this case. If the ladder broke because of any incompleteness of the scaffold, the plank on it being lacking whereby the weight would be distributed, then it was the plaintiff's own negligence in attempting to use the scaffold before it was completed, he being engaged in building it.

This ladder was one of several similar to it provided by the master to be used in the business, and was selected and brought to the job by the foreman. It consisted of two side pieces, with rungs in holes in the side pieces. It had been painted. There is nothing to indicate that the ladder was defective, rotten or unsafe. To all outward appearance it was strong and sufficient for the purpose to which it was put; when it broke one side broke square off, and the wood was, at the point of fracture, "brittle, like chalk." It does not appear that this was a structural defect, or that it was a defect that

a reasonable inspection would have disclosed. *Henggler* v. *Cohn,* 39 *Vroom* 240. There is no evidence whatever as to the failure of the defendant to cause reasonable inspection to be made of this ladder, and if the fracture could raise an inference of neglect of duty, on the principle of *res ipsa loquitur,* this is not that case, for the evidence is that there was nothing to indicate that the ladder was defective, rotten or unsafe; to all appearance it was strong and sufficient for the purpose to which it was put, and no reasonable inspection would have disclosed any defect. *Electric Co.* v. *Kelly,* 28 *Id.* 100.

We are unable to find any negligence or failure of duty of the defendant subjecting it to liability to damages.

The judgment of nonsuit will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH. 11.

*For reversal*—VROOM. 1.